IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| QUINTIN-JOHN D'AGIRBAUD, III, #A0265488, | ) ) | Civil No. 20-00139 JAO-KJM |
| | ) | ORDER DISMISSING FIRST |
| Plaintiff, | ) ) | AMENDED COMPLAINT IN PART AND DIRECTING SERVICE |
| vs. | ) ) | |
| J. KAM, et al., | ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART AND DIRECTING SERVICE

Before the Court is pro se Plaintiff, Quintin-John D'Agirbaud, III's

("Plaintiff") first amended prisoner civil rights complaint ("FAC").  ECF No. 10.[1]

Plaintiff claims that Halawa Correctional Facility ("HCF") Sergeant J. Kam,

Programs Administrator Gary Kaplan, and Unit Manager Monica Chun violated

his civil rights under the Eighth Amendment at HCF beginning in August 2019.

The Court has screened the FAC and finds that Counts I and II state

colorable claims for relief against Defendant J. Kam for retaliation and denial of

_____

[1]  The Court refers to the pagination assigned to filed documents by the Federal Judiciary's Case Management/Electronic Case Files system ("CM/ECF").

timely medical care and those claims shall be SERVED.  Defendant Kam is required to respond.

The Court finds that all remaining claims against Defendants J. Kam, Gary Kaplan, and Monica Chun for failure to protect and denial of due process in Counts I, II, and III fail to state any colorable claims and are DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a).

## I.  STATUTORY SCREENING

The Court conducts a pre-Answer screening of all prisoners' pleadings pursuant to 28 U.S.C. §§ 1915(e)(2) (if they are proceeding in forma pauperis) and 1915A(a) (if they allege claims against government officials).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted).  Under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662,

678 (2009) (internal quotation marks omitted).  A claim is "plausible" when the facts alleged in the complaint support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *Id.* (citation omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at  555 (citations and footnote omitted).  The "mere possibility of misconduct" or an "unadorned, the defendant-unlawfully-harmed me accusation" falls short of meeting this plausibility standard. *Iqbal*, 556 U.S. at 678–79 (citation omitted); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Pro se litigants' pleadings must be liberally construed, and all doubts should be resolved in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint, *see Lopez*, 203 F.3d at 1130, but if a claim or complaint cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  PLAINTIFF'S CLAIMS[2]

### A.    Count I

Plaintiff alleges that in August 2019, Gary Kaplan ("Kaplan") knowingly housed a closed custody, convicted sex offender with him, despite Kaplan's knowledge that Plaintiff had once filed a Prison Rape Elimination Act ("PREA") report in which he alleged a sexual assault by prison staff.  *See* ECF No. 10 at 5. Plaintiff claims that this shows that Kaplan was aware that he was a potential sexual assault victim, and therefore, this housing assignment violated Department of Public Safety ("DPS") policies, PREA, and the Eighth Amendment.

Approximately two months later, in the evening of October 29, 2019,[3] Plaintiff claims that his cell mate sexually assaulted him.  *Id.*  Plaintiff reported this assault to Sergeant J. Kam ("Kam"), who instructed Plaintiff to return to his cell and moved his cell mate to another cell in the same housing area.  Plaintiff says that Kam refused to allow him to lodge a formal complaint that evening with prison authorities or the Honolulu Police Department ("HPD").

---

[2]  Plaintiff's statement of facts are accepted as true and construed in the light most favorable to him.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[3]  Plaintiff identifies the assault as having occurred on "October 29, 2020," however, that appears to be a typographical error.  *See* ECF No. 10 at 5.

The next morning, Plaintiff reported the alleged assault to Sergeant D. Sakamoto ("Sakamoto"), who told Plaintiff that he should have reported the assault the night before.  Sakamoto gave Plaintiff a "separtee" form, which Plaintiff completed and gave to his case manager.  *Id.*  When Kam came on duty later and learned that Plaintiff had filed a written report with Sakamoto, he moved Plaintiff to a different housing area.  *Id.*  Plaintiff claims that Kam then wrote a false disciplinary charge alleging that Plaintiff had refused to change cells in retaliation for Plaintiff filing the PREA report with Sakamoto.[4]  When Plaintiff later returned from a class, Kam sent him to the segregated Special Housing Unit ("SHU").  Plaintiff alleges that Kam did this to cover up Kam's failure to move Plaintiff and his cell mate to a "dry cell" in the SHU after the incident, in violation of DPS policy.  *Id.*

**B.    Count II**

Plaintiff alleges that he was initially unable to file a "formal complaint" in the SHU because he was denied access to the telephone and mail.  *Id.* at 6. Plaintiff also says that he had asked Kam to send him to the medical unit on the night of the alleged assault, and continued requesting medical care the next day,

---

[4]  Plaintiff was charged with threatening his cell mate, not with refusing to change cells.  *See* ECF No. 10 at 7.

5

but was not taken to the medical unit until November 1, 2019.  Medical unit staff

notified HPD, to whom Plaintiff reported the alleged sexual assault.

## C.    Count III

Monica Chun ("Chun") conducted Plaintiff's disciplinary hearing for

threatening his cell mate.  Kam's allegedly false charge that Plaintiff had refused

to change cells was not at issue.  *See* ECF No. 10 at 7.  Plaintiff alleges that Chun

refused to allow him to call witnesses or review written reports regarding his

disciplinary charge, which he claims reveal that Kam's disciplinary report was

false.

## III.  DISCUSSION

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege:  (1) that a

right secured by the Constitution or laws of the United States was violated, and (2)

that the alleged violation was committed by a person acting under color of state

law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frey*, 789 F.3d 1030,

1035–36 (9th Cir. 2015) (citing *id.*).

Section 1983 requires an actual connection or link between a defendant's

actions and the plaintiff's alleged deprivation.  *See Monell v. Dep't of Soc. Servs.*,

436 U.S. 658, 692 (1978); *Rizzo v. Goode*, 423 U.S. 362, 371–72, 377 (1976).  "A

person 'subjects' another to the deprivation of a constitutional right, within the

meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).  Thus, a plaintiff must allege that he suffered a specific injury as a result of a particular defendant's conduct and he must affirmatively link that injury to the violation of his rights.

Plaintiff's claims that Kaplan and Kam failed to protect him from harm and denied him medical care are reviewed under the Eighth Amendment.  Plaintiff's claims that Kam retaliated against him and Chun denied him reports and witnesses at his disciplinary hearing, however, arise under the First and Fourteenth Amendments respectively, and are reviewed accordingly.[5]

## A.    Eighth Amendment

The Eighth Amendment protects prisoners from inhumane methods of punishment and inhumane conditions of confinement.  *See Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006).  Extreme deprivations are required to state a

---

[5]  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

conditions-of-confinement claim, and "only those deprivations denying the minimal civilized measure of life's necessities" will support an Eighth Amendment violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citation omitted). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (citations omitted).

To state an Eighth Amendment claim, an inmate must show that: (1) "the deprivation alleged [is] objectively, 'sufficiently serious;'" and that (2) the prison official had a "'sufficiently culpable state of mind,'" that shows "'deliberate indifference' to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297–98 (1991)) (other citations omitted). The "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

### 1.     Failure-to-Protect

"Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society,'" and "prison officials have a duty to protect prisoners from violence." *Farmer*, 511 U.S. at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see Clem v. Lomeli*, 566 F.3d

1177, 1181 (9th Cir. 2009); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005).

A prison official need not "believe to a moral certainty" that an inmate is at risk of harm "before [he] is obligated to take steps to prevent such an assault," but "he must have more than a mere suspicion that an attack will occur." *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986) (citation omitted). "[S]peculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to [an inmate's] future health." *Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (citation omitted). The obviousness of the risk may be sufficient to establish knowledge. *See Farmer*, 511 U.S. at 842; *Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). The prisoner may demonstrate that the risk was obvious due to the prisoner's personal characteristics or conditions within the prison. *See Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013).

### a.   Failure-to-Protect Claims against Kaplan

Plaintiff alleges that Kaplan housed him with a closed custody, sexual offender, despite Kaplan's knowledge that Plaintiff had filed a PREA report alleging sexual assault by a prison staff member, and had an ongoing lawsuit

challenging DPS's policy of housing closed custody inmates with general population inmates.[6]

Plaintiff alleges that this should have identified him as a potential sexual assault victim who should not be housed with a known sexual offender.  Plaintiff does not state *when* he filed this PREA report, however, or whether it was investigated and upheld.  Nor does he explain why filing a PREA report against a prison staff member should have alerted Kaplan to the danger of housing Plaintiff with an inmate convicted of a sexual offense.  Plaintiff does not allege that his cell mate had a record of sexual assault in jail or prison, or allege other facts suggesting that this inmate was likely to sexually assault Plaintiff or other inmates.

Similarly, Plaintiff's lawsuit against DPS regarding housing closed custody inmates with lower custody inmates, without more information, does not show that Kaplan acted with deliberate indifference when he housed *this* inmate with Plaintiff.  In his original Complaint, Plaintiff detailed the extensive review that DPS and Kaplan undergo when deciding which inmates may be safely housed

---

[6]  In *D'Agirbaud v. Alanzo*, No. 1:18-cv-000021 JMS-WRP (D. Haw.), Plaintiff alleges defendants failed to protect him from specific, closed custody gang members from whom he had separatee status and had sought protective custody.

together under DPS regulations and PREA standards.[7]  *See* ECF No. 1 at 10; ECF No. 1-2 at 8–11.  Under those standards, as set forth by Plaintiff in the Complaint and accompanying exhibits, the Court determined Plaintiff failed to state a claim of deliberate indifference against Kaplan under the Eighth Amendment, PREA guidelines, or DPS policies.  *See* Order dated June 16, 2020, ECF No. 9 at 21–22. Plaintiff does not allege that he feared such an assault during the two months he was housed with this inmate and alerted prison officials.  Nor does he allege that he was more susceptible to an assault because his cell and/or housing unit were inadequately guarded, or known to have blind spots inside the cell that prevented guards from monitoring him safely.  Plaintiff's allegations, without more, do not show that the risk of harm to him was so obvious that Kaplan had to have understood it and nonetheless acted with deliberate, reckless indifference when he housed Plaintiff with his cell mate.[8]

_____

[7]  Although Plaintiff omits these facts in the FAC, the Court is not required to disregard contradictory evidence in a verified prior complaint or accept inconsistent facts alleged in an amended pleading.  *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (stating amended pleadings must be "'consistent with the challenged pleading'" and "do not contradict the allegations in the original complaint" (quoting *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296–97 (9th Cir. 1990))).

[8]  Under Plaintiff's argument, prison officials would be prohibited from housing inmates convicted of violent crimes such as murder or rape, with inmates

(continued...)

Plaintiff therefore fails to state a colorable claim for relief against Kaplan and this claim is DISMISSED.

### b.    Failure-to-Protect Claims against Kam

Plaintiff suggests that Kam failed to protect him *after* he told Kam that he had been sexually assaulted by his cell mate, when Kam moved the cell mate to a different cell but not to a different housing unit immediately after the alleged assault, and failed to move both of them to a "dry cell" in the SHU.

Plaintiff does not explain how this placed him in further serious danger of physical harm or deprived him of the minimum civilized requirements needed for his safety.  Plaintiff fails to state a failure-to-protect claim against Kam and this claim is DISMISSED.

### 2.    Denial of Medical Care

Plaintiff says that Kam refused to send him to the medical unit after the assault on October 29, 2019, and that he was not taken to the medical unit until November 1, 2019.  *See* ECF No. 10 at 6 (Count II).  To prevail on a claim for the denial of medical care, a prisoner must demonstrate that a defendant acted with "deliberate indifference to [his] serious medical needs."  *Jett v. Penner*, 439 F.3d

---

[8](...continued)
convicted of non-violent crimes, without regard to the characteristics of individual inmates and the safety precautions in place at the prison.

1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

"A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (citation and internal quotation marks omitted), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain" are examples of serious medical needs. *Id.* at 1059–60 (citations omitted).

Deliberate indifference to an inmate's "serious medical need" can be shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and . . . harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060). The prison official must know of and disregard an excessive risk to a prisoner's health. *See Farmer*, 511 U.S. at 837 (rejecting an objective test for deliberate indifference).

Plaintiff's allegation that he was sexually assaulted by his cell mate in his cell qualifies as a serious medical need, and Kam's alleged refusal to send Plaintiff

13

to the medical unit for two days after the alleged assault states a colorable claim for relief.  This claim against Kam shall be served and requires a response.

## B.   First Amendment:  Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009)).

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citations omitted).

To prove retaliation, a "[p]laintiff must establish a nexus between the . . . retaliatory act and the protected activity." *See Grenning v. Klemme*, 34 F. Supp.3d 1144, 1153 (E.D. Wash. 2014) (citation omitted).  A connection between the alleged retaliation and protected conduct can be shown by a chronology of events from which retaliation can be inferred.  *See Watison*, 688 F.3d at 1114 (citations omitted).  The plaintiff must also allege either a chilling effect on future First

14

Amendment activities, or that he suffered some other "more than minimal" harm. *Id.* (quoting *Rhodes*, 408 F.3d at 567–68 n.11). The plaintiff need not "show that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Brodheim*, 584 F.3d at 1271 (emphasis omitted) (quoting *Rhodes*, 408 F.3d at 568–69).

Plaintiff alleges that Kam falsely reported that he refused to change cells *after* Plaintiff reported the alleged sexual assault to Sakamoto and HPD. *See* ECF No. 10 at 5 (Count I). This allegedly revealed that Kam had refused to accept Plaintiff's report, allow him to call HPD, or follow DPS policies after such a report is made. Kam's actions resulted in Plaintiff's transfer to segregated housing and disciplinary charges. These facts state a colorable First Amendment retaliation claim against Kam and shall be served and require a response.

## C.    Due Process Claims

To state a due process violation, a plaintiff must first establish a liberty or property interest for which protection is sought. Liberty interests can arise from the Due Process Clause itself or from state law. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted); *Hewitt v. Helms*, 459 U.S. 460, 466–68 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472,

481–84 (1995); *Chappell v. Mandeville*, 706 F.3d 1052, 1062 (9th Cir. 2013) (citation omitted).  If no protected liberty interest is at stake, no process is required.  *See, e.g.*, *Wilkinson*, 545 U.S. at 221; *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 459–60 (1989) (citations omitted); *Meachum v. Fano*, 427 U.S. 215, 223–24 (1976); *McQuillion v. Duncan*, 306 F.3d 895, 900 (9th Cir. 2002).  "[A]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  *Montayne v. Haymes*, 427 U.S. 236, 242 (1976); *Hewitt*, 459 U.S. at 468 (quoting *id.*).

A state-created liberty interest may arise through state statutes, prison regulations, and policies.  *See Chappell*, 706 F.3d at 1063 (citations omitted).  But state liberty interests must be of "real substance," meaning freedom from restraint that (1) imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or (2) "will inevitably affect the duration of [a] sentence."  *Sandin*, 515 U.S. at 478, 484, 487 (citation omitted).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted).  To comply with

16

the requirements of due process, prison officials must provide a prisoner facing

disciplinary charges:  (1) written notice of the charges before the disciplinary

hearing; (2) at least 24 hours to allow the prisoner to prepare for the hearing; (3)

the right to call witnesses and present documentary evidence, unless doing so

would be unduly hazardous to institutional safety or correctional goals; (4)

assistance from another prisoner or staff person if the issues presented are complex

or the prisoner is illiterate; and (5) a written statement by the fact finders detailing

the evidence relied upon and the reasons for the disciplinary action.  *See id.* at

564–70.

### 1.    Kam's Alleged False Statements or Charges

Plaintiff apparently alleges that Kam's false report denied him due process.

ECF No. 10 at 5 (Count I).  First, Plaintiff has no freestanding due process "right

to be free from false accusations."  *Garrott v. Glebe*, 600 F. App'x 540, 545 (9th

Cir. 2015) (citations omitted); *see Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir.

1989) (explaining that claims based on false charges, "standing alone, do not state

constitutional claims" (citation omitted)); *Shepherd v. Nueschmid*, No. 2:19-cv-

0084 JAM DB P, 2019 WL 1229773, at *7 (E.D. Cal. Mar. 15, 2019) (same).

"Filing false allegations by itself does not violate a prisoner's constitutional rights

so long as (1) the prisoner receives procedural due process before there is a

17

deprivation of liberty as a result of false allegations; and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights." *Carroll v. Scott*, No. 1:20-cv-00086 EPG (PC), 2020 WL 4192258, at *4 (E.D. Cal. July 21, 2020) (collecting cases and citing *Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987)).

Second, Plaintiff provided evidence with his original Complaint showing that Kam actually charged him with threatening his cell mate's safety, but did not charge him for refusing to change cells. *See* ECF No. 1-2 at 4 (Notice of Report of Misconduct and Hearing).[9]  Regardless of statements Kam may have made regarding Plaintiff's alleged refusal to change cells, Plaintiff was neither charged nor found guilty of this allegedly false allegation, and therefore, Plaintiff suffered no harm or denial of due process on this claim.

Finally, Plaintiff does not allege the outcome of Kam's alleged false statements or report.  That is, he does not explain how these allegedly false statements caused him "atypical and significant hardship."  *Sandin*, 515 U.S. at 484.

---

[9]  Plaintiff was found guilty of "Threatening another person, other than a correctional worker, with bodily harm, or with any other offense against the person or the person's property."  ECF No. 1-2 at 4.

Plaintiff fails to allege a plausible claim regarding Kam's alleged false statements that Plaintiff refused to change cells and this claim is DISMISSED.[10]

### 2.     Due Process Claim against Chun

Plaintiff alleges Chun denied him due process during his disciplinary hearing.

First, as noted above, Plaintiff alleges no facts suggesting that he was subjected to "atypical and significant hardship" pursuant to Chun's guilty finding on his disciplinary charge, or that this guilty charge will affect the duration of his sentence. *See Sandin*, 515 U.S. at 484.  That is, he makes no comparison of the duration and intensity of his conditions of confinement in the SHU compared to those imposed on inmates in administrative segregation and protective custody, i.e., inmates in analogous discretionary confinement settings, to show that he was subjected to atypical or significant hardship.  *See Chappell*, 706 F.3d at 1064–65 (applying factors set forth in  *Sandin*) (citations omitted).  He therefore fails to plausibly allege that he had a state-created liberty interest for which he was denied due process.

_____

[10]  As discussed *supra* Part III.B., however, Plaintiff states a colorable retaliation claim regarding his allegation that Kam filed the disciplinary charges, regardless of whether they were false or truthful.

Second, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609–10 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not.").  Chun's finding Plaintiff guilty of threatening his cell mate, does not in itself state a due process claim. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (stating prisoners have no "separate constitutional entitlement to a specific prison grievance procedure" (citation omitted)); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *see also Todd v. Cal. Dep't of Corr. & Rehab.*, 615 F. App'x 415, 415 (9th Cir. 2015) (same).

Finally, even if Plaintiff could identify a liberty interest, he fails to show that Chun denied him due process.  Plaintiff received written notice of his charges well before the hearing, he does not allege that Chun was biased, and he received a written statement of the evidence Chun relied on to find him guilty of the charge. *See Wolff*, 418 U.S. at 556, 563–66, 571; *see also* ECF No. 1-2 at 4 (Notice of Report of Misconduct and Hearing, acknowledging notice of the charge and hearing, no objection to committee, and providing statement of evidence and reasons for discipline).  Although Chun denied him witnesses and confidential

20

written reports, he does not explain what relevant, exculpatory information these witnesses and evidence would have provided in light of his admission that he made certain statements.  Although Plaintiff disputes that his statements constituted threats, relying largely on his cell mate's statement that he did not feel threatened, prison officials disagreed and determined that Plaintiff's statements caused a safety issue at the prison.

Plaintiff fails to state a colorable due process claim against either Kam or Chun and these claims are again DISMISSED.

## IV.  <u>CONCLUSION</u>

(1)  The First Amended Complaint, ECF No. 10, is DISMISSED in part. Specifically, Plaintiff's claims against Defendants Gary Kaplan and Monica Chun in Counts I and III are DISMISSED; and against Defendant J. Kam, alleging the denial of due process and failure-to-protect him from assault, are DISMISSED.

(2)  Plaintiff's claims against Defendant Kam for retaliation and the denial of medical care under the First and Eighth Amendments state colorable claims for relief, SHALL BE SERVED, and require a response.

## V.  <u>SERVICE ORDER</u>

IT IS HEREBY ORDERED:

21

(1)  The Clerk shall send the U.S. Marshal a copy of this Order, a copy of the First Amended Complaint, and a completed summons for Defendant Kam. The U.S. Marshal shall open a file and retain these documents for use in the event that Defendant Kam declines to waive service of the summons.

(2)  Per agreement with the Department of Public Safety, the Clerk shall provide by electronic means to DPS litigation coordinators Laurie Nadamoto, Esq. and Shelley Harrington, Esq.:  (a) a copy of this Order; (b) a copy of the First Amended Complaint, ECF No. 10; (c) a completed Notice of Lawsuit and Request for Waiver of Service of Summons form addressed to Defendant Kam;  and (d) two completed Waiver of Service of Summons forms.

(3)  Defendant Kam shall return the waiver to the U.S. Marshal within 30 days after the request for waiver of service of summons is *sent.*  The U.S. Marshal shall file the waiver with the court.  If Defendant Kam fails to do so within that time, the U.S. Marshal shall NOTIFY THE COURT, which will direct the U.S. Marshal to personally serve the summons and complaint.  In that event, Defendant Kam will be required to pay the costs of service.

(4)  Defendant Kam shall file a response to the Complaint within 60 days after electronic service if formal service is waived, or 45 days if service of the summons is not waived.

22

(5)  Plaintiff shall notify the court within one week of any change of address.  This notice shall contain only information about the change of address and its effective date and shall not include requests for other relief.  Failure to do so may result in dismissal of the action for failure to prosecute under Rule 41(b) of the Federal Rules of Civil Procedure.

(6)  After Defendant Kam has filed a response, Plaintiff's documents are deemed served on Kam or his attorney(s) who participate in the court's Case Management Electronic Case Filing (CM/ECF) system.  The U.S. Marshal is not responsible for serving documents after service of the operative pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, July 30, 2020.



Jill A. Otake
United States District Judge

*D'Agirbaud v. Kam, et al.*, Civil No. 20-00139 JAO-KJM; Order Dismissing First Amended Complaint and Directing Service